W. C. PEACOCK, *et als., v.* W. H. WRIGHT, as Treasurer, and J. W. PRATT, as Assessor and Collector of the Division of Honolulu, Territory of Hawaii.

### Decided: September 8, 1902.

1.   The Legislature of Hawaii has the general power to legislate upon all questions of taxation in relation to providing a local system of revenue to carry on the government of the Territory of Hawaii, the only limitation being that such legislation shall not be "inconsistent with the Constitution and laws of the United States, locally applicable," and where said Legislature has enacted a local Income Tax Law, the United States District Court will not interfere by injunction to restrain the collection of taxes assessed under said law, where complainants have an adequate remedy at law.

2.   The Organic Act passed by Congress for the government of the Territory is the fundamental law of the Territory of Hawaii; and

by the provisions of that Act the legislative power of the Territory is extended to "all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States, locally applicable."

3. A territorial legislature has all the powers of a State legislature, except as limited by the Organic Act of the Territory, the Constitution of the United States and the Acts of Congress, and these powers include the power to tax for local purposes, which is inherent in all governments.

4. The avoidance of a multiplicity of suits given as a ground of equitable jurisdiction, is not such a multiplicity of suits as is contemplated in equity, where it appears that no one of the complanants would be subjected in any event to more than one action, either to recover from him the amount of an assessment found due under a territorial income tax law, or to recover back any moneys paid by him under color of legal process.

5. Where a bill in equity was filed by a number of complainants in the United States District Court against the Assessor and Tax Collector of the Territory of Hawaii, praying for an injunction against the said Assessor and Tax Collector, enjoining and restraining him from collecting from the complainants, or any one of them, the assessments claimed to be due under an Act of the Legislature of the Territory of Hawaii, known as the Income Tax Law (Act 20 Session Laws 1901, page 31) on the ground that the said law is unconstitutional and void; and alleging a general and common interest in the subject matter of the action by the complainants, and that they join in the action in order to avoid a multiplicity of suits; upon a demurrer filed to said bill upon the ground that the same does not state such facts as to entitle the complainants to the relief prayed for, and that they and each of them have an adequate remedy at law, the demurrer was sustained and the case dismissed, the Court *holding:* (1) That no equitable jurisdiction was shown to exist in the court to entertain the bill; (2) that each of the complainants had a complete and adequate remedy at law in an action to recover from the Assessor and Tax Collector of the Territory of Hawaii any moneys that may be paid by them, or any of them, to said Tax Collector under the compulsion of legal process; (3) that the Legislature of the Territory of Hawaii was acting within the general powers conferred upon it by Congress in the enactment of the said Income Tax Law, and this Court will not entertain a bill to enjoin the collection of the tax.

IN EQUITY.   APPLICATION FOR INJUNCTION.   DEMURRER TO BILL.

*Thomas Fitch,* attorney for certain complainants.

*J. J. Dunne,* attorney for certain complainants.

*Robertson & Wilder* and *E. P. Dole,* Attorney General of the Territory of Hawaii, attorneys for defendants.

Estee, J.   A bill in equity was filed in this Court by complainants, praying this Court to enjoin the respondents therein from collecting or attempting to collect from the complainants or any one of them any moneys whatever upon assessments under an Act of the Legislature of the Territory of Hawaii of 1901, known as the Income Tax Law; and also praying the further order of this Court that it declare the said so-called Income Tax Law unconstitutional and void.

Before the hearing a motion to amend the bill in equity was made and granted, whereby the name of W. H. Wright, as the Treasurer, was stricken from said bill as one of the defendants therein, and the name of S. Roth & Co. as one of the complainants. The bill as amended is therefore directed only to the defendant, J. W. Pratt, as the Assessor and Tax Collector of the Honolulu Division of the Territory of Hawaii.

The bill sets forth the fact that complainants are residents and doing business in Honolulu, Territory of Hawaii; that in the year 1901, the Legislature of the Territory of Hawaii enacted Act 20, Session Laws of 1901, P. 31, known as the Income Tax Law; that the said law was at the time of its enactment, and ever since has been, and now is, invalid, unconstitutional and void and in violation of the Constitution of the United States, and especially of the Fourteenth Amendment to said Constitution.

The bill further alleges that, notwithstanding the invalidity of the law, the Treasurer of the Territory approved a form of return of income tax, and that J. W. Pratt, as Assessor for the Division of Honolulu, required and compelled complainants, and each of them, to make and return to him, and that they did each make and return to him under compulsion, and to avoid the penalties prescribed in the Act, sworn statements of the income of the complainants, and each of them, for the year commencing July 1, 1901, and ending July 31, 1902.

That the gross income returned as aforesaid by the complainants, amounts to more than the sum of two million one hundred and forty-seven thousand dollars; that the net income returned as aforesaid, amounts to the sum of four hundred and two thousand, eight hundred and thirty-four dollars; that the income tax on the same amounts to the sum of eight thousand and fifty-six and 68-100 dollars, and that the said assessor and collector will, unless enjoined by the order of this court, collect from these complainants the said amount.

The complainants further allege that if they should pay the tax to the assessor under protest, and it should afterwards be determined that the said law is unconstitutional and void, they could not procure a return of the money so paid, for in the meantime, under the system of finances adopted in the territory, the money received from complainants would have been paid out to persons having demands on the treasury of Hawaii.

Certain other allegations are made as to the condition of the treasury of Hawaii, which do not seem material to the case, the bill finally stating that the complainants have no adequate remedy at law; that they have a common and general interest in the subject matter of the action and will be similarly affected by the result thereof, and in order to avoid a multiplicity of suits they join herein.

The demurrer filed on behalf of J. W. Pratt, as Assessor and Collector of the Division of Honolulu, Territory of Hawaii, is based upon two grounds, namely:

1.  "That the complainants have not in and by their said bill made or stated such a case as entitles them, or any of them, to any relief from or against the defendant touching the matters contained therein; and

2.  "That the complainants are not entitled to sustain said bill for the reason that they have a full, complete and adequate remedy at law."

The Income Tax Law was passed by the Legislature of the Territory of Hawaii on the 30th day of April, 1901, and provided for the levy of taxes for territorial and local purposes only. The ordinary tax laws of the territory evidently did not

produce sufficient revenue for the support of the local government, and therefore the Legislature passed the Act complained of, providing for the levy and collection of this tax upon incomes.

There is no question in this case as to the power of the Legislature of the Territory of Hawaii to pass general taxation laws. Under the Act of Congress entitled "An Act to provide a government for the Territory of Hawaii, passed by the 56th Congress of the United States of America, on the 27th day of April, 1900, and approved on the 30th day of April, 1900," and which, under its terms, took effect on June 14, 1900, it is provided (Section 55 thereof):

"That the legislative power of the territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable."

"Rightful subjects of legislation" are those subjects upon which legislatures have been in the practice of acting with the consent and approval of the people they represent. *Maynard v. Hill*, 125 U. S. 190, 204; *Cope v. Cope*, 137 U. S. 682; *State v. Tutty*, 41 Fed. 753, 758.

The power to tax is in its very nature inherent in all governments, and is, under our political system, vested in the various legislatures, and in Congress for certain national taxes, limited only by constitutional provisons. And it has been held by the Supreme Court of the United States that a territorial legislature has all the powers of a State legislature except as limited by its organic act, the Constitution of the United States and the Acts of Congress. See *Walker v. New Mexico & S. P. R. R. Co.*, 165 U. S. 593; *Board of Trustees of Vincennes University v. State of Indiana*, 14 How. (U. S.) 268; *Miners' Bank v. State of Iowa*, 12 How. (U. S.) 1; *Williams v. Bank of Michigan*, 7 Wend. (N. Y.) 539; *Swan v. Williams et al.*, 2 Mich. 427.

Therefore, taking into consideration these general principles, and the decisions of the Courts, and in addition thereto, the language of Section 55 of the Organic Act, which is the fundamental law of the territory, (*National Bank v. County of*

*Yankton,* 101 U. S. 129), there can be no question as to the general power of the Legislature of Hawaii to legislate upon all questions of taxation in relation to providing a local system of revenue to carry on the government of the territory of Hawaii; the only limitation being that such legislation shall not be "inconsistent with the Constitution and laws of the United States, locally applicable." The passage of the Act complained of was undoubtedly within such legislative power subject to the constitutional and congressional restrictions referred to.

This being clear it alone remains for me to consider whether this court sitting as a court of chancery has the power or jurisdiction to enjoin the collection of this territorial tax which was regularly levied under an act of the territorial legislature, while acting within its general powers granted by Congress. Can this be done even if such act is unconstitutional and void? I do not think it can. It certainly cannot be done if there is an adequate remedy at law; and it seems clear to the court that in this case there is a complete and adequate remedy at law.

One of the chief reasons given for equitable relief in this case is, the avoidance of a multiplicity of suits; that each of the complainants would be obliged in the event that he were to pay the tax under protest upon the ground that the same was illegal, to bring an action for the recovery of the sum so paid; or that in the event that each of the complainants refused to pay the taxes each would be subjected to a suit by the tax collector and assessor for the collection of the same, all of which might as it is claimed, be avoided by the determination of the question of the legality of the tax by a court of equity.

But is the multiplicity of suits that complainants claim may be avoided by this court taking action, such multiplicity as is contemplated in equity? No one of these complainants would be subjected to more than one suit, either upon a refusal to pay or a payment under protest and a consequent suit to recover. This principle is stated most succinctly and clearly in the case of *Dodd v. Hartford,* 25 Conn. 232, 238, a case in which a joint petition was filed to restrain the collection from several

complainants, of sewer assessments made upon their lands severally, and which were claimed to be illegal: the Court there saying:

"The multiplicity of suits which the petitioner seeks to avoid does not injuriously affect any one of the petitioners. No one of them has occasion to expect any such multiplicity of suits affecting himself. One suit is all that any one of them has to fear, and the object of this bill would seem to be to relieve these parties severally from that one suit, and to consolidate the apprehended litigation. In other words, to enforce a consolidation rule by means of the extraordinary powers of the courts of chancery. If the assessment were against one person, only, it is not claimed that he could transfer from a court of law to a court of equity the question of his liability. But how is the condition of any one of these petitioners the worse, because others are assessed for the same improvement?"

The court saying further: "It would undoubtedly be convenient to try the question relating to these warrants in one comprehensive law suit. But it does not seem to the court that the case presented by the bill is one of such irreparable injury or of inadequate relief at law as to warrant us in taking it away from the legal tribunals."

See also *Cooley on Taxation*, page 546.

In the case of *Arkansas Building and Loan Association v. Madden*, 175 U. S. 269, Mr. Chief Justice Fuller said:

"The rule is that the collection of taxes under state authority will not be enjoined by a court of the United States on the sole ground that the tax is illegal; but it must appear that the party taxed has no adequate remedy by ordinary process of law, and that there are special circumstances bringing the case within some recognized head of equity jurisdiction."

*Pittsburg & C. Railway v. Board of Public Works of W., Va.*, 172 U. S. 32; *Shelton v. Platt*, 139 U. S. 591; *Dows v. City of Chicago*, 11 Wall U. S. 108, 112.

And the Court saying further, in the said case of *Arkansas Building & Loan Association v. Madden, Supra*, that—

"On principle, the interference of the courts of the United States by injunction with the collection of state taxes......can only be justified in a plain case not otherwise remediable."

And finally held in that case that "the bill of complaint did not set forth any facts tending to show that complainants could not escape the forfeiture by payment of the $205 under protest and recover back the money so paid, if the law should be held void. We assume that the payment would, under the circumstances, be compulsory and not voluntary and no reason is perceived why the rule permitting recovery back would not apply."

In the case of *Dows v. City of Chicago,* Supra, one of the earliest cases in which this principle is enunciated, and which is followed by the later decisions, Judge Field said:

"The party of whom an illegal tax is collected has ordinarily ample remedy, either by action against the officer making the collection, or the body to whom the tax is paid...... If the tax was illegal, the plaintiff protesting against its enforcement, might have had his action after it was paid, against the officer or the city to recover back the money, or he might have prosecuted either for his damages. No irreparable injury would have followed to him from its collection; nor would he have been compelled to resort to a multiplicity of suits to determine his rights."

The law seems to be clear that when a person by the compulsion of the color of legal process, pays moneys unlawfully demanded, or is deprived of his property by seizure, he may recover it back. *Elliott v. Swartout,* 10 Pet. (U. S.) 137; *Bend v. Hoyt,* 13 Pet. (U. S.) 263; *Philadelphia v. Collector,* 5 Wall (U.S) 720, 731; *Swift Company v. United States,* 111 U. S. 22; *Arkansas Building and Loan Association v. Madden,* 175 U. S. 269.

Again: It is prescribed by Section 3224 of the Revised Statute of the United States that—

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

"Any court" undoubtedly refers to any court of the United States and comprehends this court. And I assume that the words "restraining the assessment or collection of any tax" means any tax prescribed by the Congress of the United States. Indeed it was held in *State Railroad Tax Cases*, 92 U. S. 575, quoting from pages 613, pages 613, 614, that—

"Although this (referring to Section 3224) was intended to apply alone to taxes levied by the United States it shows the sense of Congress of the evils to be feared if courts of justice could, in any case, interfere with the process of collecting taxes on which the government depends for its continued existence."

The court going on further to show that there must be some other equitable ground of relief before it will interfere by injunction with the assessment or collection of a tax and stating that it will require "a clear case for equitable relief before it will sustain an injunction against the collection of a tax which is part of the revenue of a state."

The reason why the courts have so uniformly refused to restrain the collection of taxes whether illegally assessed or not unless it be shown that the circumstances of each case brings it within some well known branch of equity jurisdiction, rests chiefly in the fact that such injunctions are attacks upon the other independent and co-ordinate branches of government, and such injunctions would if lightly issued, operate as a restraint upon all government.

. In this case no fraud is alleged, nor is there any other equitable point called to the attention of the court save the avoidance of a multiplicity of suits, which does not seem to the court to be a fact.

Let the demurrer be sustained and the bill dismissed with costs assessed to complainants.

. Note: Affirmed on appeal. See *Peacock v. Pratt*, etc., 121 Fed. 770.